**IN THE UNITED STATES DISTRICT COURT** F I L E D

**FOR THE** ___Eastern___ **DISTRICT OF TEXAS** U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

___Tyler___ **DIVISION**

FEB - 2 2015

Form To Be Used By A Prisoner in Filing a Complaint
Under the Civil Rights Act, 42 U.S.C. § 1983

_Freddie Fountain # 1640115, and All Others_
_similarly situated_

Plaintiff's name and ID Number

DAVID J MALAND, CLERK
BY
DEPUTY_____

_Coffield Unit, TDCJ_

Place of Confinement

CASE NO: ___6:15 CV 100___
(Clerk will assign the number)

v.

_John Rupert, Warden, Coffield Unit, 2661 FM_
_2054, Tennessee Colony, Texas, 75884_

Defendant's name and address

'Jury'

Schneider / Mitchell

_See Attachment 'B'_

Defendant's name and address

___NA___

Defendant's name and address
(DO NOT USE "ET AL.")

---

## INSTRUCTIONS - READ CAREFULLY

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1. To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2. Your complaint must be legibly handwritten in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACK SIDE OF ANY PAGE**. ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3. You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4. When these forms are completed, mail the original and one copy to the Clerk of the United States Court for the appropriate District of Texas in the Division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. The list labeled as "VENUE LIST" is posted in your unit law library. It is a list of Texas prison units indicating the appropriate District Court, the Division and an address of the Divisional Clerks.

## FILING FEE AND IN FORMA PAUPERIS

1. In order for your complaint to be filed, it must be accompanied by the filing fee of **$350.00**.

2. If you do not have the necessary funds to pay the filing fee in full at this time, you may request permission to proceed *in forma pauperis*. In this event you must complete the application to proceed *in forma pauperis* (IFP), setting forth the information to establish your inability to prepay the fees and costs or give security therefore. You must also include a six (6) month history of your Inmate Trust Account. You can acquire the application to proceed IFP and appropriate Inmate Account Certificate from the law library at your prison unit.

3. 28 U.S.C. 1915, as amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "…if a prisoner brings a civil action or files and appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee." Thus, the Court is required to assess and, when funds exist, collect, the entire filing fee or an initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the Court will apply 28 U.S.C. 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from your Inmate Account, until the entire **$350** filing fee has been paid.

4. If you intend to seek *in forma pauperis* status, then do not send your complaint without an Application to Proceed IFP, and the Certificate of Inmate Trust Account. Complete all the essential paperwork before submitting it to the Court.

## CHANGE OF ADDRESS

It is your responsibility to inform the Court of any change of address and its effective date. Such notice should be marked **"NOTICE TO THE COURT OF CHANGE OF ADDRESS"** and shall not include any motions(s) for any other relief. Failure to file a NOTICE TO THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedures.

## I.  PREVIOUS LAWSUITS:

A. Have you filed any other lawsuits in the state or federal court relating to imprisonment?            ✓ YES _____ NO

B. If your answer to "A" is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

1. Approximate date of filing lawsuit: _January 23, 2012_

2. Parties to previous lawsuit:
   Plaintiff(s): _Freddie Fountain_

   Defendant(s): _John Rupert_

3. Court (If federal, name the district; if state, name the county) _Eastern District of Texas_

4. Docket Number: _6:12 cv 034_

5. Name of judge to whom case was assigned: _Leonard Davis_

6. Disposition: (Was the case dismissed, appealed, still pending?)

   _Voluntarily dismissed_

7. Approximate date of disposition: _unknown_

see Attachment 'A'

**II. PLACE OF PRESENT CONFINEMENT:** _Coffield Unit_

**III. EXHAUSTION OF GRIEVANCE PROCEDURES:**

Have you exhausted both steps of the grievance procedure in this institution? ___✓___ YES ___ NO

Attach a copy of the Step 2 grievance with the response supplied by the prison system.

**IV. PARTIES TO THE SUIT:**

A.  Name of address of plaintiff: _Freddie Fountain, and All Others similarly situated, Coffield Unit, 2661 Fm 2054, Tennessee Colony, Texas, 75884._

B.  Full name of each defendant, his official position, his place of employment, and his full <u>mailing</u> address.

Defendant #1:  _see Attachment 'B'_

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
_see Attachment 'C'_

Defendant #2:  _same_

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
_same_

Defendant #3:  _same_

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
_same_

Defendant #4:  _same_

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
_same_

Defendant #5:  _same_

Briefly describe the act(s) or omission(s) of this defendant, which you claimed harmed you.
_same_

## V. STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how <u>each</u> defendant is involved. <u>You need not give any legal argument or cite any cases of statutes</u>. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember that the complaint must be stated briefly and concisely. IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

*see Attachment 'C'*

## VI. RELIEF: State briefly exactly what you want the court to do for you. Make no legal arguments. Cite not cases or statutes.

*see Attachment 'D'*

## VII. GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases:

*Freddie Lee Fountain [legal] ; Rooster [alias]*

B. List all TDCJ-ID identification numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you, if know to you.

*TDCJ #'s 1391538 ; 1640115*

## VIII. SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ✓ YES ____ NO

B. If your answer is "yes", give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1. Court that imposed sanctions (If federal, give district and division): *Eastern District, Tyler Division*

2. Case Number: *6:14cv 103*

3. Approximate date sanctions were imposed: *3/18/14*

4. Have the sanctions been lifted or otherwise satisfied? ____ YES ✓ NO *a strike*

C. Has any court ever warned or notified you that sanctions could be imposed? __✓__ YES ____ NO

D. If your answer is "yes", give the following information for every lawsuit in which warning was imposed. (If more than one, use another piece of paper and answer the same questions.)

   1. Court that imposed warning (if federal, give the district and division): _Same as above 'B'_

   2. Case number: _____Same_____

   3. Approximate date warning were imposed: _____Same_____

Executed on: _January 26ᵗʰ 2015_                    _Freddie Fountain_
              (Date)                                   (Printed Name)

                                                    _[signature]_
                                                  (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

1. I declare under penalty of perjury all facts presented in this complaint and attachment thereto are true and correct.

2. I understand if I am released or transferred, it is my responsibility to keep the Court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.

3. I understand that I must exhaust all available administrative remedies prior to filing this lawsuit.

4. I understand I am prohibited from bringing an *in forma pauperis* lawsuit if I have brought three or more civil actions in a Court of the United States while incarcerated or detained in any facility, which lawsuits are dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger or serious physical injury.

5. I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire **$350** filing fee and costs assessed by the Court, which shall be deducted in accordance with the law from the inmate account by my custodian until the filing fee is paid.

Signed this ____26ᵗʰ____ day of _____January_____, 20 __15__.
              (Day)                    (Month)              (Year)

                                                    _Freddie Fountain_
                                                   (Printed Name)

                                                    _[signature]_
                                                  (Signature of Plaintiff)

**WARNING: The Plaintiff is hereby advised any false or deliberately misleading information provided in response to the following questions will result in the imposition of sanctions. The sanctions the Court may impose include, but are not limbed to monetary sanctions and/or the dismissal of this action with prejudice.**

'Witness List'

1. Anthony White  # 541668
2. Howard Carroll  # 1067360
3. Andrew Wesley  # 1511661
4. Erik Rodrigues  # 1699164
5. Larry Knox  # 712398
6. Carlos Villarreal  # 1623669
7. Jose Ramirez  # 1556379
8. Jessie Washington  # 901757
9. Erik Gonzales  # 1097058
10. Leon Jackson  # 380769
11. William McKnight  # 820828
12. Jimmy Morgan  # 1129344
13. Kenneth Thomas  # 1599139
14. Ismael Mares Jr. # 1636999
15. Adrian Souza  # 818655
16. Tirance Howard  # 880638
17. Jesse Ramos Jr. # 1329175
18. Elliott Williams  # 481914
19. Rodney Brown  # 1405378
20. Charles Wilson  # 521150
21. Jacob Resendez Jr. # 1627427
22. Reid Esteen  # 1100114
23. R. A. Elliso  # 1444782
24. Javier Vega  # 1170546
25. Jerry Haltom  # 518967
26. Rolando Garcia  # 1787893
27. James Crawford  # 1798163
28. Darius Harris  # 1627402
29. Mitchell Moreland  # 1837289
30. David White  # 1600547
31. Johnny Fuentes  # 1068462
32. Jeremy Appleton  # 827614
33. Joe Hernandez  # 1554350
34. Dwayne Levy  # 563066
35. David Ancira  # 1674899
36. Christopher Jones  # 1088254
37. Eddie Jeffrey  # 1385554
38. Wilbur Griffith  # 1465791

39. Jesus Enriquez  # 1768278
40. Joey Kelly  # 1062900
41. Raul Mendez  # 1571168
42. Derrick Fuller  # 1101978
43. Joe Weathers  # 817845
44. William Taylor  # 1602487
45. Vincente Garcia  # 1323342
46. Michael Washington  # 1251756
47. Trevor Hilburn  # 1699981
48. Johnny Pina  # 518398
49. Michael McMullens  # 723591
50. Jorge Reyna  # 1447858
51. Lorenzo Gonzalez  # 1795471
52. Joe A. Patina  # 1874617
53. Eloy Jera  # 1816238
54. Salvador Martinez  # 1410589
55. Jose Cuellar  # 1422183
56. Peporro Medino  # 1383369
57. Marcus Jeter  # 1649219
58. Sylvester Spraggings  # 1370687
59. Richard Howell  # 1549923
60. Roberto Briseno  # 922092
61. William Taylor  # 1323342
62. Joseph Ingram  # 1591021
63. Christopher Mack  # 1655528
64. Gilberto Lopez  # 1702785
65. Mark Stevens  # 1523614
66. Lawrence Hyde  # 1719244
67. Earl Lockridge  # 686726
68. John Mays  # 1426932
69. Jamar Johnson  # 761799
70. Charles Marty  # 789656
71. Russell Qualls  # 1511132
72. Luis Alonso  # 1606717
73. David Jordan  # 1768055
74. Kevin Mabry  # 1805637
75. Avery Houston  # 1744102
76. David Lara  # 1337673

Exibit 603A
2 of 2

77. Miguel Sanchez #1786131
78. Manuel Saavedra #686308
79. Jeremie Gray #1773896
80. Johnny Villanueva #1380550
81. Tony Calvillo #1015487
82. Woody Soloman #618624
83. Fred Hornsby #697944
84. Douglas L. Starr #641646
85. Don Johnson #1254331
86. Christopher Beshires #1792693
87. Petrie Robinson #1635660
88. Roberto Perez #1189927
89. Alejandro Hinojosa #1754397
90. Barney Oldfield #1149374
91. Richard Montez #1886440
92. Zamora Xavier #1668678

In The United States District Court
For The Eastern Distric Of Texas
Tyler Division

State Of Texas                                    §
                                                  §
County Of Anderson                                §

'Affidavit'

I  Xavier, Zamora        #1668678 ,herein affiant,a man of sound mind,over the age
of 21 years,andcapable of stating the matters herein thru personal knowledge,
do hereby state:
That I and all other ad-seg Coffield prisoners have been subjected to many
cruel and inhumane conditions long term.To include many forms of food and drink
contamination,not given any second or third meal drinks,we have never been
given any tool,proper supplies to clean or sanitize our cell,and every cell I've
ever been held in was filthy and full of disease,virus and so on.Hundreds of
meals a year are unnutritionally complete and regulary contain no meat source
of protein,and are often missing other porportions of food such as vegetables.
The officers have regularly adjusted our shower temperatures to strait cold or
scalding hot to try to hurt us or infuluence us to not shower.The showers are
filthy,full of rust,mold,and often hold standing stagnent water full of bugs
and dead roaches.The officers influence us to not exchange our clothes,because
we turn them in and often do not get any back in return.Staff do not perform
well being checks on us as they should.And we've had roaches,spiders and other
bugs in our cells for years.
Correctional officer Allen ,whom has also done this to us long term,
approached my cell on the morning of January 21,2015 and asked me if I wanted
toshower.He told me as he did everyone else and always does,that if I or we come
out,he will tear our house up and take all our shit. At about 9:55am we all
started asking him why he treats us so badly and does'nt give us meals drinks,
wear gloves or hear nets when handling our foods,do his cell checks on us and
falsifies our cell conditions,and why wont he give us any tools and chemicals to
clean our cells.Correctional officer Allen then said to us all"your all my
bitches and I'll do whatever I want and yall wont do nothing about it."
Correctional officer Allen soon left,and came back back later at or about 3:14pm
stood in front of J-314 cell and said to us all"who's got a problem with the way
I handle yall?"No one said anything and he left.
I declare under penalty of perjury that the foregoing is true and correct.
Excuted this day of 22nd of January 2015 at Tennessee Colony Texas 75884


'Further the affiant sayeth naught'

/s/ Zamora Xavier #1668678

Xavier,Zamora #1668678
Coffield Unit
2661 FM 2054
Tennessee Colony Texas 75884


EXIBIT 599A

In The United States Distric Courts
For The Eastern Distric Of Texas
Tyler Division

State Of Texas                          §
                                        §
County Of Anderson                      §
                          'Affidavit'

I  Lorenzo Gonzalez  # 1795471 ,herein affiant,a man of sound mind,over the age
of 21 years,and capable of stating the matters herein thru personal knowledge,
do hereby state:
That I and all other ad-seg Coffield prisoners have been subjected to many
cruel and inhumane conditions for years.To inculde many forms of food and drink
contamination,not given any second or third meal drinks,we have never been
given any tool proper supplies to clean or sanitize our cell,and every cell
I've ever been held in was filthy and full of disease,virus and so on.Hundreds
of meals a year are unnutritionally complete and regularly contain no meat
source of protein and are often missing other porportions of food such as
vegetables.The officers have regularly adjusted our shower temperatures to
strait cold or scalding hot to try to hurt us or influence us to not shower.
The showers are filthy,full of rust,mold,and often hold standing stagnent water
full of bugs and dead roaches the officers influence us to not exchange our
clothes,because we turn them in and often do not get any back in return. stuff
not perform well being checks on us as they should. and we've had roaches ,and
spidersand other bugs in our cells for years.
Correctional officer Allen,whom has also done this to us for years,approached
my cell on the morning of January 21,2015 and asked me if I or we come out,he
will tear our house up and takeall our shit.At about 9:55am we all started
asking him why he treats us so badly and does'nt give us meal drinks,wear gloves
or hear nets when handling our foods,do his cell checks on us and falsifies our
cell conditions,and why wont he give us any tools and chemicals to clean our
cells.Correction officer Allen then said to us all"your all my bitches and I'll
do whatever i want to yall and yall wont do nothing about it."Correctional
officer Allen then soon left,and came back later or about 3:14pm,stood in front
of J314 cell and said to us all "whos got a problem with the way I handle yall?'
No one said anything and he left.
I declare under penalty of perjury that the foregoing is true and correct.
Excuted this 22nd of January 2015 at Tennessee Colony Texas 75884

'Further the affiant sayeth naught'

                              /s/ Lorenzo KEITH Gonzalez  # 1795471

                              Lorenzo Gonzalez # 1795471
                              Coffield Unit
                              2661 FM 2054
                              Tennessee Colony Texas 75884

In The United States District Court
For The Eastern District Of Texas
Tyler Division

Satae Of Texas                          §                    Exibit 601A
                                        §
County Of Anderson                      §

'Affidavit'

I Alejandro Hinojosa #1754397,herein affiant,a man of sound mind,over the age
of 21 years,and capable of stating the matters herein thru personal knowledge,
do hereby state:
That I and all other ad-seg Coffield prisoners have been subjected to many cruel
and inhumane conditions for years.To include many forms of food and drink
contamination,not given any second or third meal drinks,we have never been given
any tool proper supplies to clean or sanitize our cell,and every cell I've ever
been held in was filthy and full of disease,virus and so on.Hundreds of meals a
year are unnutritionally complete and regularly contain no meat source of
protein,and are often missing other porportions of food such as vegetables.The
officers have regularly adjusted our shower temperatures to strait cold or
scalding hot to try to hurt or influence us to not shower.The showers are filthy
full of rust,mold,and often hold standing stagnent water full of bugs and dead
roaches.The officers influence us to not exchange our clothes,because we often
do not get any back in return.staff do not perform well being checks on us as
they should.And we've had roaches,spiders and other bugs in our cells for years
        Correctional officer Allen,whom has also done this to us for years
approached my cell onthe morning of January 21,2015 and asked me if I wanted to
shower.He told me as he did everyone else and always does,that if I or we come
out,he will tear our house up and take all our shit.At about 9:55am we all
started asking why he treats us so badly and does'nt give us meal drinks,wear
gloves or hear nets when handling our foods,do his cell checks on us and
falsifies our cell conditions,and why wont he give us any tools or chemicals to
clean our cells. Correction officer Allen then said to us all"your all my
bitches and I'll do whatever I want and yall wont do nothing about it."
Correctional officer Allen soon left,and came back later at or about 3:14pm and
stood in front of J314 cell and said to us all"whos got a problem with the way
I handle yall?" No one said anything and he left.
I declare under panalty of perjury that the foregoing is true and correct.
Excuted this 22nd of January 2015 at Tennessee Colony Texas 75884

'Further the affiant sayth naught'

                                        /s/ Alejandro Hinojosa

                                        Alejandro Hinojosa #1754397
                                        Coffield Unit
                                        2661 FM 2054
                                        Tennessee Colony Texas75884

C. 1. Approx. date of suit filed: Aug. 2013
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Brad Livingston
   3. Docket no.: 6:13cv588
   4. Court: Eastern District of Texas
   5. Judge: Nicole Mitchell
   6. Disposition: voluntarily dismissed
   7. Approx. date of disposition: Feb. 2014

D. 1. Approx. date of suit filed: Dec. 2013
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Rick Thaler, et al.
   3. Docket no.: 6:13cv958
   4. Court: Eastern District of Texas
   5. Judge: Nicole Mitchell
   6. Disposition: Pending
   7. Approx. date of disposition: NA

E. 1. Approx. date of suit filed: 2/24/14
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Rick Thaler
   3. Docket no.: 6:14cv145
   4. Court: Eastern District of Texas
   5. Judge: Nicole Mitchell
   6. Disposition: Dismissed
   7. Approx date of disposition: 5/30/14

F. 1. Approx. date of suit filed: 2014
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Nicole Mitchell
   3. Docket no.: 6:14cv277
   4. Court: Eastern District of Texas
   5. Judge: John Love
   6. Disposition: voluntarily dismissed
   7. Appr. date of disposition: 2014

G. 1. Approx. date of suit filed: Feb. 2014
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Melissa Fountain
   3. Docket no.: 6:14cv103
   4. Court: Eastern District of Texas
   5. Judge: John D. Love
   6. Disposition: Dismissed
   7. Approx. date of disposition: 3/18/14

H. 1. Approx. date of suit filed: 4/4/14
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Brad Livingston
   3. Docket no.: 6:14cv268
   4. Court: Eastern District of Texas
   5. Judge: John D. Love
   6. Disposition: Pending
   7. Appr. date of disposition: NA

I. 1. Approx. date of suit filed: Aug. 8 2014
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: Brad Livingston
   3. Docket no.: 6:14cv686
   4. Court: Eastern District of Texas
   5. Judge: Nicole Mitchell
   6. Disposition: voluntarily dismissed
   7. Approx. date of disposition: 8/25/14

J. 1. Approx. date of suit filed: Jan. 5, 2015
   2. Parties: Plaintiff: Freddie Fountain
      Defendant: United States
   3. Docket no.: 6:15cv011
   4. Court: Eastern District of Texas
   5. Judge: John D. Love
   6. Disposition: Pending
   7. Approx. date of disposition: NA

K 1. Apprx. date of suit filed: Dec. 11, 2014
2. Parties: Plaintiff: Freddie Fountain
          Defendant: Jeffery Richardson
3. Docket no.: 6:14 cv 924
4. Court: Eastern District of Texas
5. Judge: John D. Love
6. Disposition: Pending
7. Apprx. date of disposition: NA

## 'Defendants'

1). <u>John Rupert</u> - Warden, Coffield Unit, TDCJ, herein suit refered to as defendant number 1, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

2). <u>Vickie Barrow</u> - Access to Courts Manager, Region II, TDCJ, herein suit refered to as defendant number 2, in her individual and official capacity, address unknown.

3). <u>Gaye Karriker</u> - Law Library Supervisor, Coffield Unit, TDCJ, herein suit refered to as defendant number 3, in her individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884,

4). <u>Daniel White</u> - Investigator, Coffield Unit, TDCJ, herein suit refered to as defendant number 4, in his individual capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

5). <u>Anisha Thompson</u> - LVN, UTMB medical, Coffield Unit, herein suit refered to as defendant number 5, in her individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

6). <u>Deborah Roden</u> - Clerk, Coffield Unit, TDCJ, herein suit refered to as defendant number 6, in her individual capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

7). <u>Michael Roark</u> - Lieutenant, Coffield Unit, TDCJ, herein suit refered to as defendant number 7, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

8). <u>Michael Collum</u> - Lieutenant, Coffield Unit, TDCJ, herein suit refered to as defendant number 8, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

9). <u>Guy Ferguson</u> - Lieutenant, Coffield Unit, TDCJ, herein suit refered to as defendant number 9, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

10). <u>Brett Buckley</u> - Lieutenant, Coffield Unit, TDCJ, herein suit refered to as defendant number 10, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

11). <u>Todd Fritz</u> - Sergeant, Coffield Unit, TDCJ, herein suit refered to as defendant number 11, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

12). <u>Erik Brannan</u> - Sergeant, Coffield Unit, TDCJ, herein suit refered to as defendant number 12, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

13). <u>Sammy Polk</u> - Sergeant, Coffield Unit, TDCJ, herein suit refered to as defendant number 13, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

14). <u>Kirstie McGuire</u> - Correctional officer, Coffield Unit, TDCJ, herein suit refered to as defendant number 14, in her individual capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

15). <u>Kara McAndrew</u> - Correctional officer, Coffield Unit, TDCJ, herein suit refered to as defendant number 15, in her individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

16). <u>Kayla McAndrew</u> - Correctional officer, Coffield Unit, TDCJ, herein suit refered to as defendant number 16, in her individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

17). <u>Derek Allen</u> - Correctional officer, Coffield, TDCJ, herein suit refered to as defendant number 17, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

18). <u>Adefemi Adedinsewo</u> - Correctional officer, Coffield, TDCJ, herein suit refered to as defendant number 18, in his individual and official capacity, 2661 Fm 2054, Tennessee Colony, Texas, 75884.

19) Kenia Freeman - Correctional officer, Coffield Unit, herein suit referred to as defendant number 19, in her individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

20) Keith Foust - Correctional officer, Coffield Unit, herein suit referred to as defendant number 20, in her individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

21) Joshua Webster - Correctional officer, Coffield Unit, herein suit referred to as defendant number 21, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

22) Janerine DeHart - Correctional officer, Coffield Unit, herein suit referred to as defendant number 22, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

23) Nathaniel Hill - Correctional officer, Coffield Unit, TDCJ, herein suit referred to as defendant number 23, in her individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

24) Ryan Holt - Correctional officer, Coffield Unit, TDCJ, herein suit referred to as defendant number 24, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

25) Lyle Sikes - Correctional officer, Coffield Unit, TDCJ, herein suit referred to as defendant number 25, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

26) Kevin Eubanks - Correctional officer, Coffield Unit, TDCJ, herein suit referred to as defendant number 26, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

27) Eric Miller - Major in charge of surveillance, Coffield Unit, TDCJ, herein suit referred to as defendant number 27, in his individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

28) Jane/John Doe(s) - title(s) unknown, Coffield Unit, TDCJ, herein suit referred to as defendant number 28, in his/her/their individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884, identified as the officers or staff whom have long-term (beginning with the initial camera system installation and operations in about January 2014, through the present) been assigned to watch the camera boards and daily activities of all ad-seg and equivalent areas and sections of the prison.

29) Jane/John Doe(s) - Librarian(s)/regular librarian, Coffield Unit, TDCJ, herein suit referred to as defendant number 29, in his/her/their individual and official capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884, identified as past and present regular librarian(s) tasked with ensuring the prisoners of ad-seg and equivalent are provided with adequate, proper, and meaningful access to regular reading books and other items from the library.

30) Derrick Redd - Sergeant, Coffield Unit, TDCJ, herein suit referred to as defendant number 30, in his individual capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

31) Rebekah Heggel - MHC/UTMB, Coffield Unit, TDCJ, herein suit referred to as defendant number 31, in her individual capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

32) Guillermo Delacruz - Major, Coffield Unit, TDCJ, herein suit referred to as defendant number 32, in his individual capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

33) John Doe/Thomas - Sergeant, Coffield Unit, TDCJ, herein suit referred to as defendant number 33, in his individual capacity, 2661 FM 2054, Tennessee Colony, Texas, 75884.

Attachment 'B'

## Statement of Claim

### A. Jurisdiction

1). Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 ; The United Nations Charter, 59 Stat. 1033 (1945) ; The law of nations ; Customary International law ; The American Convention on Human Rights (ACHR) ; The Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment (CAT) ; The Universal Declaration of Human Rights (UDHR); The American Declaration on the Rights and Duties of Man (ADRDM), and ; The International Covenant on Civil and Political Rights (ICCPR). This court has jurisdiction under 28 U.S.C. § 1331 (federal question), and ; 28 U.S.C. § 1343 (civil rights). Plaintiff further seeks a declaratory judgement pursuant to this courts jurisdiction under 28 U.S.C. § 2201.

### B. Venue

2). The Eastern District of Texas, Tyler Division is an appropriate venue under 28 U.S.C. § 1391, due to the events having given rise to the claim, having occurred within this District and Division.

### C. Facts

3). The Plaintiff will refer to himself and all Others similarly situated within administrative segregation (ad-seg) or equivilant (including all prisoners in custody status' of Pre-hearing detention, solitary confinement, and transit), past, present, and future, collectively as the 'prisoners,' herein. He will otherwise refer to himself only as the Plaintiff, herein.

4). The prisoners are and were at all times relevant to this suit, both prisoners of the Texas Department of Criminal Justice (TDCJ) assigned to ad-seg or equivilant at the Coffield Unit in Tennessee Colony, Texas, and; majorily United States citizens who's rights are protected under both United States law and constitution, and all International law and treaties shown in above paragraph 1). The prisoners are and were at all times relevant to this suit, fully reliant upon the defendants for the security of their rights, and their safe and humane treatment.

5). The defendants are and/or were at all times relevant to this suit, individuals acting under the color of state ; "offenders" and "public officials" as defined under the articles of the Convention against Torture (CAT); and either duty post officers assigned to and working currently, or having worked long-term priory worked in and throughout the ad-seg and equivilant section of the Coffield Unit; or were otherwise actors involved as shown here after.

6). This suit is brought against the defendants, as shown in attachment 'B', for their individual and collective acts and omissions, as added to and in conjunction with the long term acts and omissions of other Coffield and TDCJ staff, in having long term and/or continuing presently to subject the Plaintiff and Prisoners unto 'Torture' and/or one single most identifiable overall violative and unconstitutional condition by and thru a 'totality' of the conditions, including any and all hereafter shown rights violations; acts and omissions

of barbarism, and maximum or substantial sensory and basic human needs deprivations, cruel and inhumane conditions, and health and life endangerments and injuries. Whereas all hereafter is stated and shown as cause under such a single said claim condition. To include :

7). The defendants acts and omissions as stated below were at all times relevant to this suit and/or remain currently, malicious and intentional, with intent to subject the Plaintiff and/or Prisoners unto cruelty, discrimination, health and life endangerment(s), serious injuries, pain and suffering, or death for their crimes against society (acts for which they've commited). The phrase "long-term" is defined as anywhere from months to years, meaning certain defendants have only been employed and/or acting as ad-seg officers at the unit for months, whereas others have been for years. And where such individual defendant's exact term of such assignment and subsequent subjection of the Prisoner's unto the shown and attached individual causes and under-claims during that time, and/or continuing thru the present, is discoverable thru agency records, such as employment and duty roster records, daily activity log records, the many hundreds of indoor video surveilance camera's footage recorded showing all the buildings, food prep areas, wings, runs, ect., The Plaintiff additionally has a total of 92 other prisoners whom were and/or remain currently assigned and housed in the ad-seg area of the prison, whom will be voluntarily testifying unto all such generalized, long-term and wide spread conditions for many years to decades back, as having been subjected unto them as well by all such staff and the defendants in this case. The generalized conditions shown below have always been open and obvious conditions to the Prisoners, staff, and named defendants alike. Such acts and omissions were otherwise done thru callious indifference.

8). Defendants numbers: 14 thru 26 are or were all long term correctional officers, directly assigned to and having worked the wings in question, having personally witnessed all the many generalized conditions, such as the prisoners cell conditions, shower conditions, wing and run conditions, infestations of spiders and roaches, issues of food, drink and clothing deficiencies and deprivations, contaminations, ect. They personally placed the prisoners in extreme, dangerous, and injurous degree showers long term and burned all the prisoners, ect. And defendants numbers: 7 thru 13 all knew of it all by longstanding and obviousness. They personally witnessed the deficient meals, did not order the correction of all the problems and cruelties, despite the prisoners having asked them too many times over. They each personally came onto the wings and runs periodically over the long term for various reasons such as uses of force, shake downs, disturbances, and some cell checks where they personally witnessed the overall cruel and inhumane cell and cell block conditions, yet did nothing. And defendant number 5 continually had personal witness of all such conditions, by having walked the runs (all) doing alleged "checks" on the prisoners over the long term. Defendants

numbers 27 and 28, upon information and belief, all had personal knowledge and witness of the prisoners not being checked on by security, administrative, or medical staff; the prisoners being regularly feed deficient meals, not being given ice water or cold meal drinks in the extreme summer heat, not being given hundreds of meal drinks per year, or any tools to clean and sanitize cells, all the many forms of food and drink contaminations, the prisoners denied daily showers long term, and denied daily clothes, access to television, ect., by them having personally sat and watched it all daily on the hundreds of indoor surveillance camera's in view of it all, food prep areas, cells, runs, ect. See e.g. Fountain v. Livingston, case no. 6:14cv 268,-U.S, D.C.-Eastern District of Texas, Tyler Division @ Defendants Notice of Disclosure and Motion for Protective Order filed Sept. 29, 2014 @ Exhibit 1, one Affidavit by Major Eric Miller. Yet defendants 27 and 28 never acted or acted reasonably to correct such cruel and inhumane or discriminative conditions.      Therefore, hereunder, all of the following defendants personal involvement, knowledge, deliberate indifference towards the Prisoners, malicious intent and callous indifference towards the Prisoners, and liability is attached and established by and through all the foregoing and/or any additional facts stated here under, or thru any possible expoundment pleadings or statements by the Plaintiff and/or his witnesses in this case.

9). Defendants numbers : 5, 7 thru 26, and (27 and 28 as related to any and all conditions viewable by the surveillance cameras) did all maliciously and intentionally, and/or thru their own callous indifference, subject the Prisoners unto the following conditions long-term and continually; and as an additional and further act, or acts and omissions of discrimination (where others similarly situated either recieve these things, or are not subjected unto such conditions by staff); and as further acts and omissions of hatred towards the prisoners, otherwise ensued and instigated as punishment against the prisoners for the act(s)(felony convictions and crimes) they've committed, with further intent to cause and ensure the prisoners severe and long-term physical and mental pain and suffering, endangerment and serious injuries;   To include : The long term, constant, and continual exposure of the Prisoners unto serious threats of virus, bacteria, disease, ect., by housing them in filthy and unclean cells year round. The cells have never been cleaned or sanitized by staff or defendants in years to decades. Nor will the defendants give the prisoners any tools or proper chemicals for them to do so themselves. Thick scum lines the Plaintiff's toilet; been held in cells splattered with pepper spray, burning him badly; mold, mildew and countless other unknown substances dried upon the inner cell surfaces. They also house high numbers of prisoners year round on L-wing, as they have the Plaintiff for a total of about 6 months, in cells full of roaches and every inner surface of the cell lined with black suit, where they allow prisoners to burn freely. ; Long-term exposures to wide spread cock roach and spider infestations; Cell runs that are seldom if ever cleaned and sanitized; and, Showers full of rust, seldom ever cleaned and sanitized, often holding ½" to ¾" deep stagnant gray water with dead bugs and roaches floating in it.

And did then cause the serious and long term infection of the Plaintiff's burn wounds in November thru December 2013, and all associated pain and suffering.

10). Defendants numbers: 7 thru 26, and 27 and 28. did all long term and/or continue to expose the Prisoners to further risks of disease, virus, bacteria, ect., by exposing them to 'multiple' forms of food and drink contaminations, deprivations of daily clean clothing, and deprivations of a daily shower for years up until December 20, 2014, allowing them only 3 per week, and did all then cause the serious infection of the Plaintiff's burn wounds in Nov. thru Dec. 2013, and all associated pain and suffering. The defendants also denied long term and continue to deny the prisoners of 'any' eating utensils, cups or glasses to drink out of; any source of television and access there thru to news and world events; many hundreds of meal drinks per year; and adequate, proper, and nutritionally complete meals. Hundreds of the meals contain 'no' source of protein "at all", including no source of meat or so little amount so as to equal no meat, e.g. less than a level teaspoon full on a tray. Many of the meals are missing entire porportions and other food groups, and the porportions were severly too small prior to the installation of the cameras and Plaintiff's other lawsuits on these matters. As a result, the defendants, as applicable, did starve the Plaintiff to death for years, and keep him in bad health and low weight, in pain and suffering throughout those years of 2011' thru 2013'. The defendants further currently and did long term both seriously endanger the Prisoners health and lives, and injured the Plaintiff multiple times by neither performing their required cell checks on the prisoners, or acting reasonably or at all to ensure other security and medical staff perform their checks on the prisoners either, and upon information and belief, all or many defendants numbers 7 thru 26, and 5 did also falsify all related records to show their checks had been performed, and the prisoners were fine and well, that the prisoners and their cells, runs, showers, ect., were clean. And the prisoners had no medical or mental health care needs of any kind. Defendant number 5 seldom ever performed her cell checks on the prisoners, and when she would come on the runs, she would routinely wait until all the prisoners were asleep and fly down the run, often opposite a large rolling shield, in the dark, unable to even see in any of the cells, and never even looking in the cells to check on the prisoners, much less wait until they were awake to speak with them, ask if they had medical or mental health problems or needs thereof, or check for symptoms of unknown mental health problems in prisoners. The prisoners could have been laying their dying or dead in the cell and she would have walked hurridly right on by. When Thompson did or does now walk the run in the daytime hours, she still does not actually look in on, or question any of the prisoners, endangering their health and lives. For its not uncommon for such prisoners to have their headphones on and backs turned when she comes hurridly by, and they never even knew. And she therefore has

seriously endangered and injured the Plaintiff many times by her intentional failure to perform such checks on him and give him access, "including needed emergency access," many times, including inability to access medical care for over a dozen counts of severe suffocation and smoke inhalation on L-wing in 2014, unable to access medical care for several shower burns, a heat stroke in 2014, an ear injury in 2014, and serious mental health problems long term in 2014. And thus caused the Plaintiff serious further injuries of pain and suffering by all of the above, as did also defendants 7 thru 26 for also having ensured the Plaintiff was provided with no access or emergency access to medical and mental health care services during such times, and defendants 27 and 28 also for the same reasons.

ii). Defendants numbers: 7 thru 26 held the Prisoners in stipped cells long term and/or continue to do so. The cells are to small for human occupancy, merely 5'x9' in size, and the bunk takes half of that, There is no running hot water, desk, writing surface in the cells, or air temperature controll. Therefore the defendants subjected the Prisoners to extreme and dangerously cold and hot temperatures through the years, and did not provide them with the necessary or humane supplies of ice water, cold meal drinks, extra cool showers ect. in the hot and deadly summer heat, where the cells often reach and remain all day and into the night at temperatures exceeding 130° F, nor given even daily clean clothes during such months of perfuse 24/7 sweating and severe round the clock saturation of clothes. The prisoners are exposed to rust in their cells as well, and subsequent threats of tetenus. The defendants have never provided the prisoners with condiments such as salt, pepper, and sugar with any meals as others similarly situated recieve with meals. The defendants expose the prisoners to majorily year round severe outside elements such as freezing cold air and rain, bugs and insects, birds deficating in close proximity to all the cells by open, screenless windows, also greatly attributing to the bee's, wasps, spiders and cockroaches found in the Prisoners cells year round. On the rare occasion that the defendants even have a second or third meal drink container on the wings, they normally contain only water or juice so heavily deluted as to be only water, still equaling "no" meal drink. The defendants and their subordinates cause and allow food and drink contaminations year round, such as meal drink containers sat in filthy mop buckets to be passed out, prepared trays carried long distances thru the buildings in "open" food tray carriers; prepared food trays double stacked in the carriers, sitting the top tray directly down into the food of the under tray; open food carriers sat and left with prepared trays on roach infested runs for the roaches to crawl up in; no officers, including defendants 14 thru 26 ever wearing gloves or hairnets while passing out food and drinks, or making SSI prisoner workers wear any of it either; there is no air ventilation system in the food prep day room areas.

12). Defendants numbers 7 thru 26 have all used extremly cruel, dangerous, and injurous tactical techniques and extraordinary influence against the Prisoners long term and/or continue to do so currently, creating and/or allowing influences upon the Prisoners to not shower or go to recreation. By the defendants intentionally tearing the cells up and strowing their property if the prisoner came out for shower or rec. Such is done in show unto all those next in line, so they wont come out at their turn. see as incorported by reference as though stated fully herein, three Affidavits by other prisoners witnessing an event that transpired on J wing 3 and 4 rows on January 21, 2015, of which the Plaintiff also witnessed, marked Exibits 599A, 600A, and 601A. Defendant number 17 is the Allen stated in the said Affidavits, those events sworn unto are true and correct, and the entire occurrence was captured on the video surveilance cameras and discoverable. If such a threat or cell destroying doesn't work as the defendants wanted, they do use other "techniques" as well. Defendants have also intentionally subjected the Prisoners to extreme cold or hot shower temperatures long term and continue to do so on a regular basis. Defendants numbers 7 thru 26 have maliciously not only burned the Prisoners long term in the showers on all wings and runs, but at times deny them of showers because the water is near boiling and simply unable to use at all. This has the intented affect of causing many to most of the next prisoners in line to then refuse their showers, Either way, the defendants work is dramatically reduced, if not eliminated entirely, at the expence of the Prisoners mental and physical well being. For the three years that they'd denied the prisoners of all but 3 showers a week, by the defendants having subjected the prisoners unto all of the above, it was a regular occurrance for the prisoners to not recieve a useable shower at all for up to weeks at a time or longer, causing serious endangerment by threats of disease, virus, bacteria, ect., especially when added unto all the other conditions. The defendants conduct is now and was always beyond criminal in nature, and in direct dishonor of the U.S. constitution and Prisoners human rights. The defendants did also long term and/or continue to use several other forms of "tactics" in order to create and/or allow further extraordinary influence to be utilized against the prisoners to get them to not shower. Such as coming at the Prisoners for their shower at extremely early hours in the morning, e.g. 3am thru 6 am, knowing the prisoners must sleep and will likely verbally refuse their shower, by being forced to choose one basic human need over another, Even further, the defendants did all long term create extra deterences set to influence the Prisoners to not shower. Such as turning all the hot water off in the showers in the winter while simoultaneously not turning the cell block heater on, not replacing broken and missing windows where the freezing outside air blew strait in on the cells, keeping them and the runs at extremly cold temperatures, often sub-freezing, seriously endangering the prisoners with pneumonia, hypothermia, ect., while ensuring they either would not come out for showers, or inability to even use the showers.

Attachment '2'.

All of the above both correctly and did long term, seriously endanger the prisoners health, both physical and mental, and lives, exposed them unto severe cruelty, and threats of disease, virus, bacteria, ect. Plaintiff adopts all facts as witnessed by Affidavits in Exhibits 599A thru 601A as his own claims herein. He brings no claims on their behalf, only of self and All others similarly situated.

13) All of the above in paragraphs 9) through 12) is currently and has always been taught, verses "adaptive" behavior of the officers. For example, as brand new officers are trained and brought in year round, their behavior and actions exactly mimic that of the all the other long-rested and experienced officers before them, and having worked Cottield ad-seg for months to years prior, including defendants numbers 7 thru 26. From the first days, weeks, months the new officers work, they act or refuse to act exactly as the others shown in above paragraphs 9) through 12). Plaintiff's 92 witnesses and the discoverable agency records such as new officers employment and duty roster records, with the on cell block and discoverable video surveillance footage of the new officers daily act and omissions on the cell blocks, easily verifies such facts. Thus, defendants numbers 7 thru 26 have actually taught all new officers to do such inhumane things to the prisoners, showing both intent and state of mind.

14) Defendants numbers: 7 thru 13, 18 and 26, did all also long term and/or continue to both show the Prisoners further cruelty while intentionally depriving them of great and excess amounts of necessary sleep, by needlessly running services such as passing out breakfast meal drinks regularly of 1am to 3am [often coffee], passing out breakfast at 3am to 5am, and laundry services at 4am to 5am, showers at 3am to 6am, where not only are the prisoners awoke or kept awake by receiving such services themselves, but because the prisoners are housed in open front cells, they are exposed to extreme amounts of noise created and caused by the operations of such services provided to all the other prisoners as well, e.g., the beating and slamming of food tray carriers on the runs at chow time; the rolling back and forth of the heavy large protective shield up and down the runs, between cells and showers; wing officers yelling back and forth to distant rotunda officers of which cells to open and close, the loud slamming of the cell doors opening and closing; and the loud clanking and slamming of Prisoners food slots opening and closing during such activity. Sleep is a basic human need, and no good reason exist to allow such forms of deprivations thereof. The prisoners should be afforded set hours for sleep and no activities, save for emergency, should be allowed operations during such set hours. Conditions such as these, seriously and further threaten the prisoners mental and emotional well being, and can reasonably be linked to suicides and a homicidal state of mind. The defendants did long term and/or continue to maliciously exhibit a full disregard for the Prisoners rights and basic human needs, while treating them like and/or transforming them into animals, if not killers.

15). As a general practice, the Prisoners go on lock-down and are subjected with shake downs, approximately every 90 days. Such itself is not an issue or claim itself in this suit. Though what is, is the transpirances that occur during such times. As the Plaintiff has shown above, the cell and run conditions are beyond appauling. Especially the floors themselves which are filthy, unsanitary, and hold any number of diseases, viruses, bacterias, ect., yet seeing and knowing this, defendant numbers: 1 who authorizes and allows all of this to happen; and 11, 13 thru 17, and 19 thru 25 who did all long-term or currently continue to act as officers directly involved in and participating in such shake downs, having been direct actors in it all themselves, and/or present and personally witnessing all show in this paragraph, and whom did also look into and/or personally "enter" the cells, witnessing the priorly shown inner cell conditions; did all long term and/or continue to completely seperate the prisoners from all of their legal work for several hours at a time, giving the officers full and complete access and privy to any and all of the prisoners legal work and documents. Where no justifiable reason exists to not allow the legal materials to be physically searched by the officers at the cell, by witness of the prisoners, and when cleared, the legal work be kept with the prisoners when removed from the cells and placed in holding while the cells are then searched. The prisoners cells are completely destroyed and flipped upside down, every one, the clean clothing, bedding, eating utensil ect., are thrown on the filthy and dangerous floors, and not washed by staff immediately thereafter. The Prisoners mats are taken out and transfered to other distant areas of the prison for inspection. Where both when taken out "and" returned the mats are thrown directly down onto the filthy cell and run floors, and drug down the runs against such floors, contaminating them all. The mats are not cleaned or sanitized, and are given back to the Prisoners badly contaminated, ever time, further endangering the Prisoners physical and mental well being, while also showing further intent and state of mind.

16). Defendant numbers: 1, 5, and 7 thru 26 did all long term and/or continue to substantialy deny the Prisoners access to regular and emergency medical care and services, year round, having continually then subjected the Prisoners to unnecessary injuries, pain and suffering caused from the great delays or total denials of such needed and requested medical care. The Prisoners often request regular and emergency medical care from the defendants and are given misleading or evasive responses, such as I'll call medical and see if they want you, or, I'll tell my supervisor. The Prisoners send in Sick Call requests, and are routinely not seen by medical at all, or otherwise do not recieve medical care for long periods of time, such as weeks to months, while suffering injuries, pain, and suffering therefrom.

17). Defendant number 29 did both long-term and does currently deny the Prisoners of the adequate, proper, and meaningfull access to regular reading books, newspapers, and other materials, for which is also inhumane and endangerous/injurous unto the Prisoners/Plaintiff's mental and emotional well-being, depriving them of mental stimuli, ability to access learning and recreational material, and knowledge of news and world events. The prisoners have never been provided with the holdings list. When they request it, they are ignored by staff, and do not recieve it. When the prisoners formally make they request for books via I-60 or Library request slip, they are often ignored or otherwise do not recieve their books. On the rare occassion that any books are ever provided, the books are expected to be returned normally within 2-5 days, and do not provide most of the lower IQ prisoners with enough time to read the book. Library staff do not personally deliver or come to pick up the books, and instead sent them with security staff to pass out and pick back up. Though security staff normally will hold or not pass out the books, and at times take the books back from the prisoners and they are lost and never returned to the library. The library in turn, places all blame on the prisoner for having not returned the book, and both severs his ability to check out any more books and threatens a case and disciplinary action against the prisoner. The Plaintiff had this exact occurrance happen to him, where he has been denied access to the regular library, and has been threatened with disciplinary action 4 times since May 2014, when he advised security staff that he had a library book that needed to be turned in, immediately, prior to leaving the Unit on chain, the officer said he would turn the book in, and did not. Defendant number 29 maliciously and intentially denies the Prisoners of access to the library by all of the foregoing. There is no justifiable reason why the librarians should not personally pick up and deliver library items, provide the prisoners with writen documentation, reciept, or proof of drop off and return, proper access to the library holdings list, and more time to read the books and materials recieved.

18). See Fountain v. Thaler, et.al, case no. 6:13cv958, U.S.D.C.-Eastern District, Tyler Division. Defendant number 1 has had full and long term knowledge of all stated in this suit, and the way all of his officers and staff were treating the Prisoners for years, including the defendants of this suit, and thought so highly of it, that he either directly himself gave many of the staff elevations in rank and pay, or directly partook in such in some way. Upon information and belief, to include correctional officers to Sergeants; Sergeants to Lieutenants; Lieutenants to Captins; Captins to Majors; Major to Assistant Warden, and ; Assistant Warden to Warden, all within the last 4 years alone, showing state of mind. Plaintiff can identify by name and position of all stated above.

19). Defendant numbers: 7 thru 17, and 19 thru 25 did all long term and/or currently deny the Prisoners of access to outside recreation and direct sunlight year round; substantial human contact; access to Pastors and religious advisors; clean, sanitized, and safe coats and blankets; or otherwise any access to programs of any kind in particular, such as anger management, parenting, ged or literacy programs; ect. The Prisoners are seldom ever offered any outside recreation, normally only offered such about six times per year, though dually requested by the prisoners of the defendants year round. The prisoners are given a clean coat and blanket each year in and around Oct. - Nov., and staff pick them all back up around Apr. - May the next year. The coats and blankets are never at any point, ever picked up by anyone to be cleaned and returned or exchanged with anew. All of the above, again did long term and does continue to currently threaten the physical and mental well being of the prisoners. Sunlight is a basic human need unto such Prisoners, as would be the need for clean, sanitized and safe coats and blankets, and access to said services and programs, and the defendants did and are discriminating against the prisoners, where others similarly situated are provided with such things.

20). Defendant numbers: 1, 2, and 3 did all long term and do currently, also maliciously and excessively deprive the Plaintiff even further of human contact, having ensued extreme sensory deprivation upon the Plaintiff, by having long term and continuing to deprive the Plaintiff of his primary and majorily only source of human contact with others, which is thru the mails. The Plaintiff is a year round indigent prisoner, otherwise fully reliant upon such defendants for any and all access and issuance of general use indigent supplies and postage. And thus, freedom of speech, human contact, the exercism of his parent/child relationship with his two minor daughters, and only form of contact available with them. The defendants have only provided the Plaintiff with equal to merely 5 one ounce general use letters per month, or less, since about December 2013, and continuing thru the present. They have done so in violation of agency policies AD-14.09, which authorizes 5 letters "per week", and BP-03.91, which authorizes "extra" letters to general correspondents if requested for a legitimate reason. The Plaintiff did always have, and currently has such legitimate needs to 5 letters per week, otherwise necessary to have an adequate and meaningful establishment of contact with the outside world, request free books from outside donor organizations (see above paragraph 17)), correspond with organizations, businesses, friends, and his two minor daughters. And otherwise instruct, teach, and share in the parent/child intimacy with them. All of which and more, the defendants did long-term and continue to maliciously deny the Plaintiff thereof, on any meaningfull level. The Plaintiff does and had continually requested such 5 letters of supplies and postage, as per Policy or instructions of I-302 request forms. Karriker is and was always

10 of 14

Attachment 'C'

not only duty obligated to adhere to Policy AD-14.09 and provide such supplies and postage equal to the 5 letters per week, but was also either authorized to provide them as "extra" letters under Policy BP-03.91, as the authorized Warden designee, or otherwise obligated to have sought such authorization from the Warden herself for them, though intentionally and maliciously refused to do so. The Plaintiff had also served Karriker with legal notice on it violating his rights on about March 18, 2014, yet she ignored him still, and continued to deny the supplies and postage, see Exibit 445A. On March 10, 2014, Karriker provided the Plaintiff with a written response on such denials, for which the Plaintiff filed with the Court in Fountain v. Thaler, case no. 6:14 cv 145, U.S.D.C.-Eastern District of Texas, Tyler Division on, about, or near the same date thereafter. The Plaintiff filed continual grievances on it, for which Karriker is quoted in response therein. Rupert and Barrow both denied the supplies and postage through and signed the grievances therein relations. See e.g. in relations, grievance # 2014057864, Exibit 'C'; grievance # 2014097271, Exibit Z³ ; grievance # 2014200367, Step 1 Exibit B100, Step 2 Exibit B101.

21). For the 92 count prisoner witnesses set forth in above paragraph 7), see incorporated by reference as though stated and shown fully herewith, one two page witness list attached herewith, marked Exibit 603A.

22). Defendant numbers: 1, 13, 17, 26, and 30 thru 33 (also 4 and 6) did all maliciously and through their callious indifference keep or knowingly allowed the Plaintiff to have been kept in a small cell with "no light" for about 50 consecutive days. The Plaintiff's light bulb burned out naturally in his cell on about 8 am on November 3rd 2014. He immediately began filing grievances and requesting a bulb from his wing officers and other passing staff, and continued to do so repeatedly over the next 50 days. On the following times/dates (all are approximate), the Plaintiff advised each defendant of his light bulb having been out and no light in his cell since Nov. 3, 2014, or gave them an amount of days at that point for which he had no light bulb and light in his cell. Each defendant either acknowledged or heard him clearly. To include: A). Defendant number 7 on December 9, 2014 at about 7pm, Roark said "tell her." meaning the nearby wing boss, and he kept walking. Then again on December 17, 2014 at about 7-9 pm, Roark heard the Plaintiff clearly and "loudly" telling him and begging for a bulb, yet Roark fully ignored the Plaintiff and kept right on walking.     B). Defendant number 13 twice, once on November 7th 2014 at about 5pm, and again on November 8th 2014. Polk acknowledged, yet did nothing.     C). Defendant number 17 on December 3rd 2014 at about 8am. Allen acknowledged, yet did nothing.     D). Defendant number 26 on both November 12th 2014 thru 13th (shift split between two dates) and again on November 14th 2014 at about 3:30 am, in which Igbokwe's response was quote "oh well."

E). Defendant number 30 on December 2, 2014 at about 5pm, Redd acknowledged, yet did nothing. F). Defendant number 31 on both December 4th and 17th 2014 at my cell, and additionally by sick calls. Happel acknowledge every time, yet did nothing, or did not act reasonably to get the Plaintiff

any light in his cell. Not only had the Plaintiff told Happel of him experiencing severe mental and emotional problems, due in great part to being kept in a dark cell by staff, at his cell on 12/4/14, for which she fully acknowledged. But Happel also had full access to the Plaintiff's mental health care records, showing long term and repeated complaints of experiencing regular and severe psychological problems, yet Happel did not act or act reasonably to get him the needed light in his cell, even though by her profession and training, as a mental health care provider, she would have had full knowledge of the risks and dangers of such a conditions subjected upon the Plaintiff. Showing state of mind and intent to endanger and harm.

G). Defendant number 32 on December 18th 2014 at about 1:15 pm. Delarosa acknowledged and said something to someone on his radio, yet did not act or act reasonably to get the light or bulb.

H). Defendant number 33 on November 14th 2014 at about either 4:15 am or pm. Thomas acknowledged yet did nothing.    I). Defendant number 4. on about December 4th or 5th 2014, by full knowledge thru Plaintiff's grievance # 2015054055, Exhibit 525A, "denied process" and signed by White, showing intent and state of mind.    J). Defendant number 6 on about December 9th 2014, by full knowledge thru Plaintiff's grievance # 2015055299, Exhibit 540A, "denied process" by Roden, showing intent and state of mind.    All defendants in about sub paragraphs A) thru H) were advised by the Plaintiff as said at his cell. The Plaintiff was not given a light bulb until about 10 am on December 22, 2014.

23). The Plaintiff experienced regular and severe psychological trauma and problems during those approximate 50 days in the dark. To include but not limited to severe disorientation, excessive fear of staff, combativeness, loss of time and space, thoughts of suicide and homocide, and more.

24). During the months of October through November 2014, Defendant numbers : 5, 6, 8, 9, 12, 13, 21, 26, and 33 did all maliciously, intentionally, and/or thru callious indifference expose the Prisoners unto continual and severe cell and cell block conditions. Such as having known of and seen hundreds of broken and missing windows throughout the entire ad-seg and equivilent sections of the prison, most in close proximity to all the cells, yet as winter hit and the cold outside temperatures arrived, none of the defendants acted or acted reasonably to have had the windows replaced at all. They allowed the extremly cold and freezing air to blow strait in on the prisoners night and day, causing the cells and cell blocks to drop and remain constantly of the same temperatures as the outside air. Often in the 20° thru 40°F mark. In addition, defendant numbers : 6, 8, 9, 12, 13, 21, 26, and 33 not only intentionally did not turn the cell block heaters on "at all", during most of such times and days, or would not turn them on high enough to warm the cell blocks, but they also often turned the exhaust vents on for long hours to days at a time, pulling the freezing outside air directly in on the Prisoners even harder. Having also rained several times during such months and times of cold, the defendants allowed the freezing cold rain to blow strait in on the

Prisoners cells and runs. Where as will be shown thru the many discoverable video camera surveilance footage of all the runs, the entire runs were completely flooded with rain water during such times. During all the cold days, the footage will also show all the wing officers wearing hoodies, gloves, tobbogins, and thick coats to stay warm. The condition was not only longstanding and obvious to all, but defendants numbers: 5,12,13,21,26, and 33 all walked the wings and/or Plaintiff's run J 3 row during such times and had personal witness of the windows, and cold indoor temperatures, yet did not act or act reasonably to have had the windows replaced, turn the vents off and heater on or up high enough to warm the blocks, or otherwise take any necessary measures to have warmed the Prisoners and their cell blocks. Wherefore, as a result, the Plaintiff did suffer in severe injury therefrom all of the above, where his ears began causing him severe pain during the days leading up to November 15, 2014, then both swoll "completely shut" on 11/15/14, and remained for "many" days thereafter, while the Plaintiff suffered in around the clock severe pain and agony.

25). By and through all the foregoing acts and omissions of the defendants in above paragraphs 1) through 24), the defendants did also cause the Plaintiff serious and long term psychological, mental, and emotional injuries, by having caused or re-triggered non-pre-existing and/or pre-existing psychological and emotional problems unto the Plaintiff, otherwise not experienced or shown signs of for atleast as far back as 1995. To include, the defendants having caused the Plaintiff to have experienced repetive, long-term, and regular disorientation, combativeness, excess fear of staff, extreme anxiety, loss of time and space, thoughts of both homocide and suicide, and more.

26). "But For" the defendants acts and omissions above, which were malicious, intentional, and/or done or not done thru callious indifference, were truely irrational and offendive of judicial notions of fundamental fairness and human dignity, and shocked the Plaintiff's conscious, the Prisoners would not have been or continue to be Tortured, discriminated against, subjected to cruel and unusual punishment, denied of Freedom of Speech, substantive and procedural due process, and equal protection of the law. The prisoners would not currently or have otherwise been deprived or denied of basic human needs and civilized measures of life's necessities, or subjected to multiple and numerous forms of serious mental, emotional, and physical health and life endangerments and injuries. Nor would their rights have been or continue to be violated under both the laws and constitution of the United States, or the numerous International laws and treaties shown in above paragraph 1). Nor would the Plaintiff be currently or have been deprived and denied of the parent/child relationship with his children, long term.

27). Wherefore, by all above in paragraphs 1) thru 26), the defendants did all long-term and/or continue to subject the Plaintiff/Prisoners unto Torture and/or one single most identifiable overall violative and unconstitutional condition by a totality of the conditions; violations of his/their rights under United States' law and constitution, and International law and treaties; deprivations of basic human needs and civilized measures of life's necessities; discrimination; denied Freedom of Speech, substantive and procedural due process, and equal protection of the law; exposed to multiple and numerous forms of serious mental, emotional, and physical health and life endangerments and injuries. The Plaintiff was further denied and continues to be denied of his rights to the parent/child relationship with his children and substantial human contact. In violation of the Plaintiff/Prisoners rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution; The United Nations Charter, 59 Stat. 1033 (1945); The law of nations; Customary International law; The American Convention on Human Rights; The Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment; The Universal Declaration of Human Rights; The American Declaration on the Rights and Duties of Man, and; The International Covenant on Civil and Political Rights.

## Verification

I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, except as to matters alleged upon information and belief, and, as to those, I believe them to be true and correct. Executed this 26th of January 2015 at Tennessee Colony, Texas.

/s/ _____

Freddie Fountain # 1640115
Coffield Unit
2661 Fm 2054
Tennessee Colony Tx. 75884

Attachment 'D'

'Relief'

Wherefore, Plaintiff respectfully Prays that this Court:

A. Declare that the defendants' acts and omissions violated the Plaintiff and Prisoners rights under the laws and constitution of the United States of America; The United Nations Charter, 59 Stat. 1033 (1945); The law of nations; Customary International law; The American Convention on Human Rights; The Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment; The Universal Declaration of Human Rights; The American Declaration on the Rights and Duties of Man, and; The International Covenant on Civil and Political Rights;

B. Order the defendants to pay all court costs and filing fees;

C. Order the defendants to pay reasonable attorney fees and associated costs;

D. Order the defendants to formulate, devise, and submit unto the Court a detailed and intricate plan set to cure any and all of the continuing and/or feasibly re-subjectable, violative and inhumane conditions set forth and shown throughout this suit, so as to be capable of acceptance by the court. Then at such time as it is accepted, the plan be **Ordered** as injunctive relief by this Court;

E. Order the defendants to pay Nominal, Punitive, and Compensatory damages unto the Plaintiff, and;

F. Order any other just, equitable, or modified relief that this Court may deem necessary.

In the United States District Court
For the Eastern District of Texas
Tyler Division

Freddie Fountain                          §
vs.                                        §           Case no. _____
John Rupert, et al,                        §

Advisory to the Court'

Comes now Freddie Fountain, by and thru Plaintiff to hereby advise the Court of the following in this case.

That though priorly unaware, on 1-26-15 the Plaintiff recieved a Inmate Trust Fund Statement of Account showing that exactly ten dollars even had been put on his Inmate Trust Fund Account on December 2, 2014 that was taken in full and applied to his Court fee rears accrued. The Plaintiff never at any point had access to any of that ten dollars. That was the only funds ever put on his account, and he has no funds whatsoever at all to date therein. He will provide the Court with the Statement in question should the Court need it. The Plaintiff is still a 100% indigent prisoners and has no money of any kind anywhere to pay either the court cost or any initial partial filing fees in this case.

Executed this 27th of January 2015

I declare under penalty of perjury that the forgoing is true and correct. Executed this 27th of January 2015 at Tennessee Colony Texas.

Respectfully Submitted,

Freddie Fountain 1640115
Coffield Unit
2661 FM 2054
Tennessee Colony Tx 75884

1 of 1